UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cr-00374-JAR |
| | ) | |
| TERRANCE A. KWADE, | ) | |
| | ) | |
| Defendant. | ) | |

## **GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Terrance A. Kwade, represented by defense counsel Timothy Smith, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 13 of the Superseding Indictment, the United States agrees to dismiss the remaining counts against this defendant at the time of the sentencing (*i.e.*, Counts 14 through 16 and Count 19). In addition, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's wire fraud scheme described

in the Indictment, of which the Government is aware at this time. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the United States will request a sentence within the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that Defendant may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.

**3. ELEMENTS:**

As to Count 13, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, Defendant voluntarily and intentionally devised or participated in a scheme to obtain money by means of material false representations or promises, which scheme is described in the indictment;

**Two**, Defendant did so with intent to defraud; and

**Three**, Defendant caused to be used an interstate wire communication, that is the wiring described in the indictment for this count, in furtherance of, or in an attempt to carry out, some essential step in the scheme.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning by at least January 2020, and continuing through at least July 2024, in the Eastern District of Missouri, and elsewhere, Defendant Terrance A. Kwade, Kenneth Sparks, and Michael McClain, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud lending institutions and to obtain money and property from lending institutions by means of material false and fraudulent pretenses, representations, and promises, as described further herein. Defendant Sparks, Defendant Kwade, and Defendant M.S. McClain undertook the actions detailed below as part of their scheme and artifice to defraud.

**I. Defendant Sparks and Defendant Kwade Defrauded Lenders Out of Hundreds of Thousands of Dollars By Taking Out Fraudulent Loans in the Names of Defendant Sparks' Parishioners and Associates.**

Defendant Sparks enlisted Defendant Kwade in his effort—as detailed in Defendant Sparks' text messages—to steal "$21 million" from lending institutions by taking out fraudulent loans in the names of his parishioners and associates. Through their efforts to defraud lending institutions, Defendant Sparks and Defendant Kwade agreed that they would "try and squeeze as much [money] out of" Defendant Sparks' parishioners as they could.

For his part of the scheme, Defendant Sparks gathered and provided Defendant Kwade with the personal and banking information of his associates and parishioners. After receiving the information for those individuals, Defendant Kwade drafted and submitted to lending institutions fraudulent automobile and personal loan applications in their names. Defendant Sparks and

Defendant Kwade also coached several parishioners and associates on what lies to tell if the lending institutions ever inquired into the fraudulent automobile and personal loan applications.

After the lending institutions paid out their funds in response to Defendant Kwade's fraudulent applications, Defendant Sparks took the vast majority of the fraud proceeds for himself. As his payment, Defendant Kwade took 10% of the fraud proceeds, plus any additional costs for creating fictitious bank statements and pay stubs in the names of Defendant Sparks' parishioners and associates. Defendant Kwade often submitted those fictitious bank statements and pay stubs in support of the fraudulent loan applications.

To execute his scheme, Defendant Sparks took advantage of many of his parishioners by having fraudulent loans taken out in their names—often without their full understanding and consent. Defendant Sparks specifically singled out many of his parishioners and used them to commit his fraud because—as he stated to Defendant Kwade—he thought that they were "retarded and dyslexic and they don't know how to handle things."

Certain individuals—like Defendant M.S. McClain (the husband of Defendant McClain)—willingly allowed their names to be used in fraudulent loan applications, and knowingly and intentionally participated in Defendant Sparks' scheme to defraud lending institutions. Defendant M.S. McClain allowed Defendant Sparks and Defendant Kwade to submit multiple fraudulent loan applications in his name. After Defendant Kwade submitted the fraudulent loan applications in the name of Defendant M.S. McClain, Defendant Kwade coached Defendant M.S. McClain on the lies that he needed to tell the lending institutions to obtain and keep the fraudulent loan proceeds. On one occasion—on or about January 24, 2022—Defendant Kwade instructed Defendant M.S.

McClain to falsely represent to a lending institution that he made $75,000 per year as an accountant.

Many of the fraudulent loan applications submitted by Defendant Kwade at the direction of Defendant Sparks were fraudulent automobile loan applications that he submitted to Navy Federal Credit Union. In each of his fraudulent automobile loan applications, Defendant Kwade falsely represented that the borrower (a parishioner or associate of Defendant Sparks) needed a loan to purchase a specific automobile. In truth and fact, as Defendant Sparks and Defendant Kwade knew full well, the purported borrowers were not, in fact, purchasing the listed automobiles. Instead of using the loan proceeds to purchase the listed automobiles, Defendant Sparks and Defendant Kwade used the loan proceeds to enrich themselves.

In all, Defendant Sparks and Defendant Kwade took out at least ten fraudulent automobile loans for a total of $460,000.00. To obtain those fraudulent loans, Defendant Kwade, at the direction of Defendant Sparks, sent each of the fraudulent automobile loan applications listed

| Loan Application Date | Borrower's Name | Listed Automobile | Amount Paid |
|---|---|---|---|
| 11/20/2021 | Defendant H. Long | 2021 BMW X5 | $ 50,000.00 |
| 11/20/2021 | Parishioner D.L. | 2018 BMW X5 | $ 40,000.00 |
| 12/19/2021 | Associate A.Y. | 2021 Cadillac XT6 | $ 50,000.00 |
| 12/21/2021 | Associate M.G.Y. | 2017 BMW X5 | $ 30,000.00 |
| 12/21/2021 | Parishioner J.F. | 2021 BMW X5 | $ 60,000.00 |
| 12/21/2021 | Defendant McClain | 2021 Lincoln Aviator | $ 40,000.00 |
| 12/22/2021 | Associate J.G.Y. | 2020 Chevy Silverado | $ 30,000.00 |
| 12/22/2021 | Parishioner J.H. | 2021 BMW X1 | $ 30,000.00 |
| 1/21/2022 | Defendant M.S. McClain | 2021 GMC Sierra | $ 60,000.00 |
| 2/25/2022 | Defendant West | 2021 GMC Yukon XL | $ 70,000.00 |

below to Navy Federal Credit Union.

Defendant Kwade submitted the fraudulent automobile loan applications listed above from his residence in the Northern District of Georgia, during his trips overseas to Ghana, or from other locations that he frequented in the United States.

**II. Interstate Wire Transmissions in Furtherance of the Scheme to Defraud**

On the date set forth below, within the Eastern District of Missouri, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same, the defendants listed below did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit:

| Count | Defendants | Date | Wire Description |
|---|---|---|---|
| **13** | **Defendant Sparks**<br>**Defendant Kwade** | 12/21/2021 | Defendant Sparks' text message to Defendant Kwade, which included Parishioner J.F.'s banking information. |

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for Count 13, to which the defendant is pleading guilty, is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

**6. U.S. SENTENCING GUIDELINES: 2024 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

**a. <u>Chapter 2 Offense Conduct</u>:**

**(1) <u>Base Offense Level</u>:** The parties agree that the base offense level for Count 13 is **7**, as found in Section 2B1.1(a)(1).

**(2) <u>Specific Offense Characteristics</u>:** The parties agree that the following Specific Offense Characteristics apply for Count 13:

The parties agree that **12 levels** should be added pursuant to Section 2B1.1(b)(1)(G) because the loss exceeds $250,000, but does not exceed $550,000.

The parties agree that **4 levels** should be added pursuant to Section 2B1.1(b)(2)(B) because the offense resulted in substantial financial hardship to five or more victims.

The parties agree that **2 levels** should be added pursuant to Section 2B1.1(b)(11)(C)(i) because the offense involved Defendant's unauthorized use of her purported means of identification on a fraudulent application for a loans to obtain any other means of identification (account number created in connection with application).

**<u>Chapter 3 Adjustments</u>:**

**<u>(1) Acceptance of Responsibility:</u>** The parties agree that **3 levels** should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**<u>Other Adjustments</u>:** The parties have no further agreement regarding any other adjustments.

**<u>Estimated Total Offense Level</u>:** The parties estimate that the total offense level is **22**. If the presentence investigation report determines a different total offense level, the parties are permitted to object to or accept any enhancements or reductions in the presentence investigation report.

**<u>Criminal History</u>:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**<u>Effect of Parties' U.S. Sentencing Guidelines Analysis</u>:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7. <u>WAIVER OF APPEAL AND POST-CONVICTION RIGHTS</u>:**

**a. Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty and whether the Defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**c. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**d. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**e. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and

costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the Indictment.

**f. *Forfeiture:*** The defendant agrees to the forfeiture set forth in the Forfeiture Allegation in the Indictment to which the Defendant is pleading guilty. This agreement includes any items that were seized by law enforcement officials during the course of this investigation. The Defendant also agrees to the entry of a forfeiture money judgment in the amount of restitution determined by the court at sentencing. The Defendant further agrees that the proffer of evidence supporting this guilty plea is sufficient evidence to support such forfeiture.

The Defendant agrees that the Court may enter a consent preliminary order of forfeiture at the time of his guilty plea or at any time before sentencing. The Defendant further agrees that this order will become final as to the Defendant when it is issued and will be part of his sentence pursuant to Fed. R. Crim. P. 32.2(b)(4)(A).

The Defendant agrees that the Government may choose in its sole discretion how it wishes to accomplish forfeiture, whether by criminal or civil forfeiture, using judicial or non-judicial forfeiture processes. The Defendant waives all rights to assert any interest in the forfeited property in the future, and will withdraw any prior claims made to forfeited property, whether they were made in a judicial or non-judicial forfeiture process.

The Defendant agrees (i) to assist the Government in identifying all property that is subject to forfeiture, (ii) to take any and all actions necessary to transfer title and ownership of said property to the Government, and (iii) to help the Government to rebut the claims of nominees and/or alleged third party owners, including by testifying truthfully in any judicial forfeiture proceeding.

The Defendant knowingly and intelligently waives all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant further knowingly and intelligently waives any rights the Defendant may have (i) for notice of the forfeiture to be given in the charging instrument, (ii) for a jury or the Court to determine what property is subject to forfeiture, (iii) for the Court to explain the forfeiture at the Defendant's change of plea hearing, and (iv) for the forfeiture to be made part of the oral pronouncement of sentence and included in the judgment.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be

entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

______________________ ______________________________
Date Derek J. Wiseman

Assistant United States Attorney

03/02/2026
Date

Terrance A. Kwade
Defendant

3/2/26
Date

Timothy Smith
Attorney for Defendant